UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESUS ALFREDO CALIXTRO SANCHEZ,

Petitioner,

v.

WARDEN OF NORTHWEST ICE PROCESSING CENTER,

Respondent.

CASE NO. 2:26-cv-03886-TL

# ORDER ON MOTION FOR ORDER PROHIBITING TRANSFER OF CUSTODY AND EMERGENCY MOTION TO COMPEL RETURN

This matter is before the Court on pro se Petitioner Jesus Alfredo Calixtro Sanchez's Motion for Order Prohibiting Transfer of Custody (Dkt. No. 3) and Emergency Motion to Compel Petitioner's Return to This District (Dkt. No. 9). Having reviewed the motions, the Government's[1] status report (Dkt. No. 11), and the relevant record, the Court GRANTS IN PART

[1] Respondent Bruce Scott has not appeared in this matter, so the United States of America has filed a notice that it appears as an interested party, "on behalf of U.S. Immigration and Customs Enforcement Acting Seattle Field Office

Petitioner's Motion for Order Prohibiting Transfer of Custody, and DENIES his Emergency Motion to Compel Petitioner's Return to This District.

## I. Background

Petitioner is currently detained at Florence Staging Facility in Florence, Arizona. Dkt. No. 11 ¶ 1. Prior to that, Petitioner was detained at the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 8 (Ouk Decl.)[2] ¶ 4. On October 13, 2026, at 3:32 p.m., Petitioner was transferred from NWIPC en route to the Florence Staging Facility. *Id.* That same day, Petitioner's Petition for Writ of Habeas Corpus was filed. *See* Dkt. No. 1. The petition was posted to the docket by the Clerk of Court at 4:28 p.m. *Id.* Also at 4:28 p.m., Petitioner "was in an airplane over Nevada airspace on his way to FLO." Dkt. No. 13 (Correra Decl.) ¶ 5. At 4:33 p.m. on October 13, the Court issued its Scheduling Order, which, among other things, ordered the Government to give Petitioner at least seven days' notice prior to any action to move or transfer Petitioner from this District, or remove Petitioner from the United States. Dkt. No. 5 (Scheduling Order) ¶ 3. At around 10:00 p.m. on October 13, Petitioner arrived at Florence Staging Facility. Dkt. No. 8 ¶ 5. On October 17, 2026, the Department of Homeland Security ("DHS") issued Petitioner a notice of imminent removal. Dkt. No. 12-1 at 2.

## II. Discussion

"Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the

---

Director Julio Hernandez; U.S. Department of Homeland Security (DHS) Secretary Markwayne Mullin; DHS; and U.S. Attorney General Todd Blanche[.]" Dkt. No. 6 (Notice of Appearance). When used in this Order, "Government" will refer to the United States of America as the Interested Non-Party.

[2] Some of the facts recounted in this Order are based on the declarations of Deportation Officers Andre Ouk and Paul Correra, neither of whom claim to have firsthand personal knowledge of most of the facts they report (*see* Dkt. No. 8 ¶ 3; Dkt. No. 13 ¶ 3). The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be uncontested by the Parties.

district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). Specifically, the custodian with "the power to produce the body of [the petitioner] before the court or judge" must be named so that the petitioner "may be liberated if no sufficient reason is shown to the contrary." *Id*. at 435; *see also id*. ("[T]hese provisions contemplate a proceeding against some person who has the immediate custody of the party detained[.]" (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)); 28 U.S.C. § 2242 (the proper respondent is "the person who has custody over" the petitioner). "[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990).

In the instant matter, Petitioner names the warden of NWIPC as the Respondent, as that is where Petitioner was detained at the time he wrote and signed his petition to the Court. *See* Dkt. No. 1 at 3 ¶ 7. While the Court ordered the Government to identify the custodian of the Petitioner at the time his petition was filed (Dkt. No. 10 (Minute Order)), the Government failed to do so. *See* Dkt. Nos. 11–13. However, the Government concedes that Petitioner did not arrive at the Florence Staging Facility until after Petitioner's petition was filed and after the Court issued its scheduling order. *See* Dkt. No. 8 ¶ 4–6; Dkt. No. 5 ¶ 3. Accordingly, the Court finds that it has jurisdiction over the matter because at the time Petitioner filed his petition, Petitioner was still under the physical custody either of Warden Bruce Scott (if still at NWIPC) or of the Seattle ICE Field Office Director (if airborne en route to Arizona).[3] *See Tum Ailon v. Hernandez*, No. C26-3531, 2026 WL 3083792, at *2 (W.D. Wash. Oct. 2, 20206) (finding that the Seattle ICE Field Office Director had physical custody of petitioner and was the appropriate respondent

[3] Some ambiguity exists here as the only information before the Court is the time the petition was uploaded to the docket. Either way, however, Petitioner's immediate custodian was a person within this District and subject to the jurisdiction of this Court.

where petition was filed during transport to another detention facility)); *see also Suri v. Trump*, 184 F.4th 260, 278 (4th Cir. 2026) (holding that "[j]urisdiction is . . . proper in [petitioner's] last-known location" when his immediate custodian and district of confinement were unknown at the time of filing).

In Petitioner's Motion for Order Prohibiting Transfer of Custody, he asks the Court to enjoin the Government from transferring him out of this District (*see* Dkt. No. 3 at 2), which the Court also construes as a request enjoining the Government from removing Petitioner from the United States. Presently, the only facts that are before the Court, apart from those regarding Petitioner's transfer out of this District, are facts asserted in Petitioner's petition and other motions. Relevant to the Court's analysis is Petitioner's declaration attached to his petition, which asserts that "I do not have, nor have I ever had, a final order of deportation or removal entered against me, nor was any prior order presented to me at the time of my arrest." Dkt. No. 2 (Calixtro Decl.) at 2 ¶ 5. Despite this, Respondents have since informed the Court that they intend to remove Petitioner imminently. *See* Dkt. No. 12-1 (Notice of Imminent Removal) at 2. But Petitioner cannot be legally removed until an Immigration Judge orders him removed, and such an order becomes final. *See* 8 U.S.C. § 1231(a)(1); 8 C.F.R. § 1241.1. On the record currently before the Court, it is unclear whether a final removal Order exists, and the Court finds that the seven-day notice period required by the Scheduling Order may not be sufficient to protect Petitioner's rights given his geographical distance from the Court, which creates an impediment to expeditiously seeking further injunctive relief. Therefore, to preserve the Court's jurisdiction and maintain the status quo until the record can be developed, the Court orders that the Government shall not remove Petitioner from the United States until after the Court issues its order on Petitioner's petition, or until further Order of the Court. *See A.A.R.P. v. Trump*, 605

U.S. 91, 97 (2025) (Federal courts have "the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve . . . jurisdiction over the matter.").

Therefore, the Court grants in part and denies in part as moot Petitioner's Motion for Order Prohibiting Transfer of Custody (Dkt. No. 3). Petitioner has already been transferred out of this District, but he has not yet been removed from the United States.

As for Petitioner's Emergency Motion to Compel Petitioner's Return to This District (Dkt. No. 9), the Court acknowledges that Petitioner's transfer was underway prior to the entry of the scheduling order in this case, and his transfer therefore did not violate any Order of the Court or any law of which the Court is aware. Therefore, the Court will not order Petitioner's return to this District.

## III. CONCLUSION

Accordingly, the Court orders:

(1) Petitioner's Motion for Order Prohibiting Transfer of Custody (Dkt. No. 3) is GRANTED IN PART and DENIED IN PART AS MOOT. The Government, and all its officers, agents, employees, attorneys, and persons acting on its behalf or in concert with it, ARE PROHIBITED from transferring Petitioner out of the United States or from his current location pending the resolution of his petition or further order of the Court, unless it is to return him to NWIPC.

(2) Petitioner's Emergency Motion to Compel Petitioner's Return to This District (Dkt. No. 9) is DENIED.

(3) As Plaintiff is proceeding pro se and to not unnecessarily delay the resolution of the case for any of the Parties, the Court will allow Petitioner the opportunity to file a motion to amend his petition to ensure that both his custodian at the time he filed his petition and his current custodian are included as Respondents. The motion SHALL be filed by the date Petitioner's traverse is due, which is **November 10, 2026**.

//

//

//

(4) The Clerk is DIRECTED to change Petitioner's mailing address to the Florence Staging Facility and to mail a copy of all documents filed in this case to date as well as a copy of this Order to Petitioner at that facility. To the extent that a more specific mailing address is needed, the Government is ORDERED to provide it to the Court by 12:00 p.m. Pacific Time on October 20, 2026.

Dated this 19th day of October, 2026.

Tana Lin
United States District Judge